STATE OF NORTH CAROLINA v. JERRY LAMONT LINDSEY

No. COA11-612

(Filed 6 March 2012)

### 1. Motor Vehicles—speeding to elude arrest—identification of defendant—not sufficient

Defendant's motion to dismiss the charge of felony speeding to elude arrest should have been granted where the pursuing officer never saw the driver as the vehicle fled from him. Some evidence must exist of a driver's identity; here, there was sufficient time between the officer losing track of the van he was pursuing and another officer seeing a van crash that the absence of identification of the fleeing driver was determinative. Even if

the van that fled the original officer was the same van that crashed some minutes later, the State presented no evidence identifying the person driving that van and no evidence of that van's activities during the intervening time.

**2. Drugs—felony possession—constructive possession—evidence not sufficient**

The trial court erred by denying defendant's motion to dismiss charges of felony possession of cocaine and marijuana where the drugs were found near trash receptacles in a parking lot after defendant fled from an automobile crash. Defendant was not in a place where he exercised any control, he was not seen taking any actions consistent with disposing of the drugs, there was no physical evidence linking him to the drugs recovered, and there were no drugs found in his van, although a large amount of cash and a wrapper that could be used to smoke tobacco or marijuana were recovered from the van.

Judge STEELMAN concurs in part and dissent in part.

Appeal by Defendant from judgments entered 13 May 2010 by Judge Timothy S. Kincaid in Superior Court, Caldwell County. Heard in the Court of Appeals 29 November 2011.

*Attorney General Roy Cooper, by Assistant Attorney General Tenisha S. Jacobs, for the State.*

*James N. Freeman, Jr. for Defendant.*

McGEE, Judge.

Jerry Lamont Lindsey (Defendant) was convicted of felonious operation of a motor vehicle to elude arrest, possession of cocaine, and possession of marijuana on 13 May 2010. Defendant argues that the trial court erred by (1) denying his motion to dismiss all charges against him; (2) denying his motion to continue; and (3) denying his counsel's motion to withdraw. We reverse the trial court's denial of Defendant's motion to dismiss.

*I. Factual Background*

Officer Ty Lee (Officer Lee) of the Lenoir Police Department responded to a call concerning a van that was sitting in the middle of Glendale Road, near Harper Avenue on 1 February 2009, at approxi-

mately 3:00 a.m. When Officer Lee arrived at the scene, he noticed a "bluish"-colored van with the letter "W" as the first letter of the license tag, sitting idle. The van's headlights were not on. As Officer Lee approached the van, the van began "heading north on Glendale." Officer Lee then turned on his blue lights and "attempted . . . to make a traffic stop," but the van "accelerated and took off."

Officer Lee continued to pursue the van and, based on his observations, the van "was going at least 55 to 65" miles per hour in an area where the posted speed limit was twenty-five miles per hour. After the van "narrowly [missed a] car that was pulling out" onto the street, Officer Lee lost sight of the vehicle. Officer Lee never saw the driver of the van.

During the pursuit, Officer Lee kept in contact with communications and other officers, relaying the description of the van. Several minutes after Officer Lee relayed the description of the van to other officers, Detective Taft Love (Detective Love) stopped a similar "bluish" van near a Wal-Mart. Detective Love noted that the driver of the van was nervous. Detective Love noticed bumper stickers on the van, and he asked Officer Lee if there were bumper stickers on the van Officer Lee had been pursuing. Officer Lee told Detective Love that he did not believe that van had any bumper stickers, and Detective Love determined that the "bluish" van he stopped was not the same van Officer Lee had attempted to stop earlier.

Sergeant Todd Penley (Sergeant Penley) also saw a "greenish-bluish" van with a large silver stripe, and as he attempted to stop that vehicle, it "crash[ed] into a light pole" in the back of a Wendy's parking lot. Sergeant Penley testified that after the van crashed, a "black male with a plaidish-type shirt" jumped

> out of [the van] and scale[d] the wall that's approximately 10 foot tall right there, so instead of me pursuing him and trying to get up the wall, I circled back around and pulled over into the Shoney's parking lot on the other side of the wall and attempted to locate where he's at.

Sergeant Penley called a K-9 officer. While waiting for the K-9 unit to arrive, Sergeant Penley, Officer Lee, and other police officers secured the area. Officer Lee recovered a hat and a cell phone in the immediate vicinity of the van. After Defendant was apprehended, no weapons or contraband were found on his person, and a search of the path Defendant had taken when fleeing the van did not reveal any

weapons or contraband. Officer Love testified that a search of the driver's side seat of the van revealed a "blunt wrapper" and a wallet that contained eight hundred dollars. Officer Love testified that a "blunt wrapper" is "often associated with—with smoking marijuana. It's something in which you can wrap either tobacco or, in some cases, marijuana and then smoke it."

After Defendant was apprehended, Officer Lee discovered a bag containing cocaine, and another officer found a bag containing marijuana, near trash receptacles in the Wendy's parking lot. Officer Lee had no idea how long the bags had been there, and though the Wendy's was closed at the time of the crash, the parking lot was open and had been accessible by the public before the area was secured.

The trial court denied Defendant's motion to dismiss the charges against him. A jury convicted Defendant on all charges. Defendant appeals.

## II. Standard of Review

The standard of review on a motion to dismiss is *de novo. Neier v. State*, 151 N.C. App. 228, 565 S.E.2d 229 (2002). Under the *de novo* standard, the Court "considers the matter anew and freely substitutes its own judgment for that of the" trial court. *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (citation omitted).

When considering the denial of a "defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). "Evidence is substantial if it is relevant and adequate to convince a reasonable mind to accept a conclusion." *State v. Robinson*, 355 N.C. 320, 336, 561 S.E.2d 245, 255 (2002) (citations omitted).

> If the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion should be allowed. This is true even though the suspicion so aroused by the evidence is strong.

*Powell*, 299 N.C. at 98, 261 S.E.2d at 117 (citations omitted). "The evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom[.]" *Id.* at 99, 261 S.E.2d at 117.

**STATE v. LINDSEY**

[219 N.C. App. 249 (2012)]

### III. Analysis

Defendant first argues that the trial court improperly denied his motion to dismiss all charges because the State did not present sufficient evidence of each element of the offenses charged and of Defendant's being the perpetrator. We agree.

### A. Felony Speeding to Elude Arrest

[1] Defendant was convicted of felony speeding to elude arrest. In reviewing Defendant's motion to dismiss the charge of felony speeding to elude arrest stemming from Officer Lee's pursuit of a "bluish" van, we must examine not only whether there was substantial evidence of the crime, but whether Defendant was sufficiently identified as the perpetrator. *Powell*, 299 N.C. at 99, 261 S.E.2d at 117. Officer Lee testified on direct concerning the van:

> Q. [D]id you have an opportunity to observe the color of the vehicle?
>
> A. Yes, I did. It was—I observed the vehicle to be a bluish van.
>
> Q. Okay. Did you also have an opportunity to observe what type of van it may have been?
>
> A. I don't know what type, but it was a mini-van from what I saw of it.

Officer Lee further testified that after he lost sight of the van:

> I gave a description [to police dispatch] from what I had of the vehicle, a bluish van. The only thing I got of the tag was that the first letter was a W, and somehow when I got to the top of the hill I lost sight of it. It could have went on Stonewall or Finley [phonetic] 1 Avenue towards 321. It could have went Stonewall to Patterson. Finley headed back to [indecipherable].

Sergeant Penley testified that the van Defendant was driving was "greenish-bluish" and had a silver stripe on the side of it. On direct, Officer Lee was shown a photograph of the van that crashed at the Wendy's, and was asked:

> Q. And when you observed the van in this photograph, did you recognize it?
>
> A. Yes, I did.
>
> Q. What did you recognize it to be?

STATE v. LINDSEY

[219 N.C. App. 249 (2012)]

A.  I recognized it's bluish—well, except for the silver. Like I said, at that time, I only got a split second look at the vehicle. I didn't notice that. I remembered the tag, the first letter was a W, and the vehicle was bluish.

Q.  Did you recognize that to be the van that you had seen earlier and pursued earlier in the evening?

MR. CLONTZ: Objection.

THE COURT: Overruled.

Q.  You may—

A.  Yes, I do.

Officer Lee was subsequently cross-examined, and testified to the following:

A.  Well, Sergeant Penley advised me did the vehicle have any silver. As far as I [had] seen, based on the short period I had contact with that vehicle, all I saw was blue and the first letter on the vehicle, which was a W. He asked me was there silver. I told him I wasn't sure. It might have had. All I saw was blue 'cause the majority of the vehicle was blue. From the half of the bottom up it was all blue.

Q.  Now Officer Lee you don't claim to have seen a driver at any time during this period; is that correct?

A.  That's correct. I never [caught] up to see the driver this whole time.

Q.  You never got close enough, did you?

A.  Never got close.

. . . .

Q.  Now, are you sure that the van that you later found at Wendy's wasn't a green van?

A.  To my knowledge, it was bluish.

Q.  You sure it didn't have a great big silver stripe at the bottom?

A.  Like I said earlier, I only had a split second to see the vehicle. The only thing I got out of it was a bluish color and the first letter of the tag, which was a W.

. . . .

Q.  So, *it could have well been a van that either went towards Wal-Mart or a van that went elsewhere that never got seen.*

A.  *It could possibly be. Like I said, I did lose sight of the vehicle once I got on top of Stonewall and Patterson.* [Emphasis added].

We disagree with the dissent that Officer Lee's testimony on direct, when taken as a whole along with his testimony on cross-examination, was sufficient evidence identifying the van that crashed in the Wendy's parking lot as being the van that fled from Officer Lee. Officer Lee's testimony on direct and cross did not constitute an issue of credibility to be decided by the jury. This testimony involved the very same witness clarifying and expounding on his earlier testimony and can only be interpreted as an admission by Officer Lee at trial that the van he observed in the Wendy's parking lot could have been a different van than the one that he had lost sight of some ten to fifteen minutes earlier.

The State cites no case in which our appellate courts have upheld the denial of a motion to dismiss on facts similar to those in this case, and we can find none. In *State v. Steelman*, 62 N.C. App. 311, 302 S.E.2d 637 (1983), this Court upheld the trial court's denial of the defendant's motion to dismiss a charge of fleeing to elude arrest when an officer had lost sight of the defendant for a period of time. In *Steelman*, however, the officer first identified a shirtless man driving the vehicle with a woman passenger. *Id.* at 12, 302 S.E.2d at 637-38. The vehicle sped away from the officer. *Id.* The officer lost the vehicle because it turned onto a logging road. *Id.* When the defendant subsequently crashed the vehicle, another officer witnessed a shirtless man fleeing from the driver's side of the vehicle, and a woman fleeing from the passenger side. *Id.* In its decision, this Court relied on the "uncontroverted fact that [both officers] described the driver as male and the passenger as female." *Steelman*, 62 N.C. App. at 313, 302 S.E.2d at 638. In addition, the defendant in *Steelman* did not contest that the vehicle that crashed was also the vehicle that fled from the first officer. The defendant argued that the woman, or some unknown third party, could have been driving the vehicle when it fled from the first officer, and that the defendant could have switched places during the period when the vehicle was out of sight of both officers. *Id.* at 313, 302 S.E.2d at 638.

*Steelman* is distinguishable, because in the present case there was no identification of the driver of the van that fled from Officer Lee, whereas in *Steelman* the officer observed the shirtless man driving the vehicle as the shirtless man ignored the officer's lights and siren and fled from him. In an unpublished opinion, *State v. Peguse*, 173 N.C. App. 642, 619 S.E.2d 594, 2005 N.C. App. LEXIS 2086 (2005), this Court held:

> There was no direct evidence introduced that defendant Hickmon was operating the vehicle at the time it was being pursued by Trooper Franze, and the trooper did not identify defendant Hickmon as the driver. As noted by defendant, [witness] Gaddy only testified that defendant Hickmon was the driver when the five men left the trailer, but she did not testify to any statements from the conversation held the next day that he had been driving when the police were pursuing them. Given the gap of several hours and an apparent robbery between the time she saw defendants leave and when they allegedly fled from law enforcement, it cannot be said that there was substantial evidence defendant Hickmon was operating the vehicle at the time this offense occurred. Accordingly, we reverse the trial court's ruling with respect to this conviction.

*Id.* at 25-26. In the present case, not only did Officer Lee fail to see the driver of the "bluish" van that sped away from him, Officer Lee was unable to definitively identify the "greenish-bluish" van with a large silver stripe that crashed as being the same van he had been pursuing earlier that night.

The facts of the present case fall between those of *Peguse* and *Steelman*. We do not suggest a bright-line rule that the officer from whom a suspect flees must always make visual contact with the suspect. Clearly, for example, if a vehicle is continuously tracked by one or more officers from the point of fleeing to the point of apprehension, and only one individual is in the vehicle, sufficient evidence would exist that the suspect apprehended was the same person who initially fled. We hold only that, on the facts before us, there was sufficient time between when Officer Lee lost track of the van he was pursuing and when Sergeant Penley observed a van crash in the Wendy's parking lot, that the complete absence of any identification of the driver of the van that fled Officer Lee is determinative of this issue.

Some evidence must exist of a driver's identity. In the present case, there was no direct evidence of the identity of the driver of the van Officer Lee was pursuing. No officer, or other witness, saw the driver of the "bluish" van before or during the pursuit. In addition, a different "bluish" van was stopped that night at a Wal-Mart. Given that there is no evidence as to the driver's identity before or during the pursuit, no evidence concerning what might have occurred in the period of time between when Officer Lee lost sight of the van he was pursuing and when Sergeant Penley observed Defendant's van crash in the Wendy's parking lot, nor substantial evidence that the "greenish-bluish" van with a silver stripe that Defendant was driving was the same van that fled Officer Lee, we reverse the trial court's ruling on Defendant's motion to dismiss the charge of fleeing to elude arrest. On these facts, there was not substantial evidence presented at trial that Defendant was driving the van that fled from Officer Lee. *State v. Robinson*, 355 N.C. 320, 336, 561 S.E.2d 245, 255 (2002).

We note that Officer Lee's testimony that the van he was pursuing could have been the van stopped at the Wal-Mart, or some other van not stopped at all that night, simply adds to the insufficiency of proof that Defendant was driving the van that fled from Officer Lee. The primary distinction between the facts in the cases cited by the State and the dissent, and the facts in the present case, is that Officer Lee *never saw the driver* of the van as it fled from him. Assuming *arguendo* that the van fleeing from Officer Lee was the same van that crashed in the Wendy's parking lot some minutes later, the State presented no evidence identifying the person driving the van that fled from Officer Lee, and further presented no evidence concerning that van's activities during the time its whereabouts were unknown.

### B. *Felony Possession of Cocaine and Marijuana*

[2] In addition to felony speeding to elude arrest, Defendant was convicted of possession of cocaine and marijuana. "To obtain a conviction for possession of a controlled substance, the State bears the burden of proving two elements beyond a reasonable doubt: (1) defendant possessed the substance; and (2) the substance was a controlled substance." *State v. Harris*, 361 N.C. 400, 403, 646 S.E.2d 526, 528 (2007). Possession may either be actual or constructive. *State v. Alston*, 131 N.C. App 514, 519, 508 S.E.2d 315, 318 (1998).

"Under the theory of constructive possession, a person may be charged with possession of an item such as narcotics when he has both 'the power and intent to control its disposition or use,' even

though he does not have actual possession." *State v. Davis*, 325 N.C. 693, 697, 386 S.E.2d 187, 190 (1989) (quoting *State v. Harvey*, 287 N.C. 1, 12, 187 S.E.2d 706, 714 (1972). If a defendant does not have exclusive control over the premises, other incriminating circumstances must be present before a court can find constructive possession of a controlled substance. *State v. Crudup*, 157 N.C. App. 657, 662, 580 S.E.2d 21, 26 (2003). "Where a controlled substance is found on premises under the defendant's control, this fact alone may be sufficient to overcome a motion to dismiss and to take the case to the jury." *State v. Neal*, 109 N.C. App. 684, 686, 428 S.E.2d 287, 289 (1993). "If a defendant does not maintain control of the premises, however, other incriminating circumstances must be established for constructive possession to be inferred." *Id.*

Constructive possession of drugs " 'depends on the totality of the circumstances in each case, and no single factor controls, but ordinarily the question will be for the jury.' " *State v. McBride*, 173 N.C. App. 101, 106, 618 S.E.2d 754, 758 (2005) (citation omitted).

In his brief, Defendant cites *State v. Acolatse*, 158 N.C. App. 485, 581 S.E.2d 807 (2003). In *Acolatse*, there was evidence presented that (1) the defendant had been driving with a revoked license, (2) placed the defendant near a convicted drug dealer's automobile then under surveillance, (3) the defendant was apprehended near cocaine recovered from the roof of a detached garage, (4) $830.00 was found on the defendant's person, "in denominations consistent with the sale of controlled substances," (5) officers recovered three different cell phones, (6) there was a strong odor of cocaine in the defendant's vehicle, and (7) the defendant was observed making a throwing motion. *Id.* at 486-490, 581 S.E.2d at 808-11. The trial court denied the defendant's motion to suppress. *Id.* This Court reversed and held that the evidence presented was insufficient to allow an inference of constructive possession of cocaine. *Id.*

In *Acolatse*, when police officers approached the defendant, the defendant fled and ran around a nearby house. That house also had bushes around it, as well as a shed and detached garage. *Id.* at 486, 581 S.E.2d at 809. The defendant did not own or reside in any of the structures. *Id.* at 487, 581 S.E.2d at 809. When the defendant ran, police officers pursued the defendant and went in opposite directions in an attempt to trap the defendant. *Id.* At one point during the chase, police officers lost sight of the defendant for a short period of time, but when the officers regained sight of the defendant, he was stand-

ing near some bushes. *Id.* One officer saw the defendant make a throwing motion toward the bushes. *Id.*

After the defendant's arrest, a search of the area uncovered narcotics on the roof of the detached garage, which was in a different direction than the bushes where the defendant was seen standing. Nothing was found in the bushes where the defendant made a throwing motion. *Id.* There were no fingerprints on the bags containing the narcotics. *Id.* The police officers also searched the defendant's car. *Id.* The search did not reveal any drugs, but the officers did recover three cell phones and detected a strong odor of cocaine inside the vehicle. The defendant had $830.00 in cash on his person. *Id.*

This Court held that it was compelled to reverse the defendant's conviction for constructive possession, relying on our Supreme Court's ruling in *State v. Chavis*, 270 N.C. 306, 154 S.E.2d 340 (1967). *Chavis* held that a strong suspicion of constructive possession alone was not sufficient to survive the defendant's motion to dismiss. *Chavis*, 270 N.C. at, 311, 154 S.E.2d at 344. In *Chavis*, officers observed the defendant continuously except for two to three seconds when they were blinded by the lights of an oncoming automobile. The defendant was wearing a hat when the officers first observed him. When the officers finally stopped the defendant, he was no longer wearing a hat. An officer located the hat along the path the defendant had been walking, and recovered narcotics from inside the headband of the hat. Our Supreme Court reasoned:

> There is no evidence that either officer observed defendant make any disposition of the hat he had been wearing or of any article or articles he may have had in his possession. Officer Truitt testified: "I did not see the defendant place his hat in any particular place. I just saw him minus his hat."
>
> The identity of the person who had possession of the marijuana prior to the discovery thereof by Officer Boone is not disclosed. Did defendant put the marijuana in the hat found by the officers? Was it put there by defendant's unidentified companion? Was it put there before or after defendant and his companion left the area where the hat was found, walked back towards Hillsboro Street and were accosted by the officers? There was no evidence the marijuana was in a hat while defendant was wearing it. Nor was there evidence the marijuana was put in the hat found by the officers at defendant's direction.

*Chavis*, 270 N.C. at 310-11, 154 S.E.2d at 344.

In the present case: (1) Defendant was not at his residence or in a place where he exercised any control; (2) though Sergeant Penley observed Defendant exit the vehicle and scramble over the wall fleeing the Wendy's parking lot, he did not see Defendant take any actions consistent with disposing of the marijuana and cocaine in two separate locations in the Wendy's parking lot; (3) there was no physical evidence linking Defendant to the drugs recovered; and (4) there were no drugs found on or in Defendant's vehicle. In the present case, the only suspicious circumstances were the large amount of cash recovered, the drugs found in a public parking lot near Defendant's van, the presence of a wrapper in the van that could be used to smoke tobacco or marijuana, and the fact that Defendant fled from police after the crash.

> *Chavis* dictates that this evidence only raises a suspicion of possession. "If the evidence is sufficient merely to raise a suspicion or conjecture as to any element of the offense, even if the suspicion is strong, the motion to dismiss should be allowed."

*Acolatse*, 158 N.C. App. at 490, 581 S.E.2d at 811 (citations omitted). We find the evidence in this case less compelling than that in *Acolatse* and *Chavis*. We must therefore reverse the trial court's denial of Defendant's motion to dismiss the charges of felony possession.

Because of our holdings above, we do not address Defendant's additional arguments.

Reversed.

Judge McCULLOUGH concurs.

Judge STEELMAN concurs in part and dissents in part with a separate opinion.

STEELMAN, Judge, concurring in part and dissenting in part.

I concur in the result of the majority opinion as to the charge of possession of cocaine, but must respectfully dissent as to the charges of felony fleeing to elude arrest and possession of marijuana.

## I. Supplemental Facts

The events relevant to these charges took place on the morning of 1 February 2009. It was a cold night. Officer Lee did not see the driver of the "bluish" mini-van during the initial chase through Lenoir.

The initial chase lasted roughly 10 minutes. Officer Lee lost sight of the mini-van when he had to slow his vehicle to avoid a car that narrowly missed colliding with the mini-van. Officer Lee advised communications that he lost sight of the bluish mini-van; that the first letter of the tag was "W;" and that the vehicle might have gone to North Main Street or to U.S. Highway 321. Officer Lee headed for North Main Street, knowing that Officer Love was on U.S. Highway 321. Sergeant Penley was also on U.S. Highway 321, and spotted the mini-van at the intersection with Pennton Avenue. Sergeant Penley activated his blue lights, and turned around to follow the mini-van. The mini-van was headed south on U.S. Highway 321, and made an abrupt left turn across three to four lanes of travel into the Wendy's parking lot, where it crashed into a light pole.

Defendant.immediately bolted from the mini-van. He was subsequently found hiding in the bushes at Shoney's. He was apprehended as he ran toward Bank of America by Sergeant Penley, Officer Curley, and Sergeant Branham of the Caldwell County Sheriff's Department. Officer Lee arrived at the parking lot "no more than 10 or 15 minutes" after he lost sight of the mini-van. Prior to the apprehension of defendant, Sergeant Penley secured the Wendy's parking lot. There were no other vehicles or persons in the parking lot while the arrest and search of the area took place. The passenger window of the mini-van was rolled down. A bag of marijuana was found five to ten feet from the passenger side of the mini-van near the "corral" for the Wendy's dumpster. A "blunt wrapper" associated with smoking marijuana was found inside the mini-van. Officer Love found about $800 in or beside the wallet containing defendant's identification card. A bag containing rocks of crack cocaine was found less than a car length away from the mini-van.

At the conclusion of the State's evidence, the trial court dismissed the charges of possession with intent to sell and deliver both cocaine and marijuana. These charges were submitted to the jury as possession of cocaine and possession of marijuana.

## II.  Felony Fleeing to Elude Arrest

I disagree with the majority that there was insufficient evidence to submit the charge of fleeing to elude arrest to the jury.

"In considering a motion to dismiss, the trial court must analyze the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference from the evidence." *State v.*

*Robinson*, 355 N.C. 320, 336, 561 S.E.2d 245, 256 (2002). "The trial court must also resolve any contradictions in the evidence in the State's favor." *Id.*

On direct examination, Officer Lee testified regarding the mini-van which crashed in the parking lot.

> Q: Did you recognize that to be the van that you had seen earlier and pursued earlier in the evening?
>
> MR. CLONTZ (Defense Counsel): Objection.
>
> THE COURT: Overruled.
>
> Q: You may—
>
> A: Yes, I do.

I note that the overruling of this objection is not argued on appeal. Any argument concerning this ruling has thus been abandoned. N.C. R. App. P. 28(b)(6). This testimony constitutes direct evidence that the mini-van pursued by Officer Lee was the same mini-van that crashed in the parking lot. The tag of the mini-van that crashed began with a "W." This is circumstantial evidence that this was the same mini-van that Officer Lee pursued.

In *State v. Steelman*, 62 N.C. App. 311, 302 S.E.2d 637 (1983), the officer lost sight of a vehicle when it turned onto a logging road. A highway patrolman spotted the vehicle on a road which was near where the logging road ended, and observed the vehicle crash in a garden. "[S]ome five to ten minutes" after he lost sight of the vehicle, the officer arrived at the scene. *Steelman*, 62 N.C. App. 312, 302 S.E.2d at 638. The defendant argued that the driver could have switched positions with the passenger, or that "some unknown third person" could have been driving. *Steelman*, 62 N.C. App. at 313, 302 S.E.2d at 638.

"For circumstantial evidence to be sufficient to overcome a motion to dismiss, it need not, however, point unerringly toward the defendant's guilt so as to exclude all other reasonable hypotheses." *Steelman*, 62 N.C. App. at 313, 302 S.E.2d at 638. "The evidence is sufficient to go to the jury if it gives rise to a reasonable inference of defendant's guilt." *Steelman*, 62 N.C. App. at 313, 302 S.E.2d at 638-39 (internal quotation marks omitted). Acknowledging that "there are numerous possibilities as to what might have happened on the logging road that night[,]" the Court rejected the defendant's argument. *Id.*

The majority distinguishes *Steelman* because Officer Lee was unable to identify the driver of the mini-van that fled from him. The majority argues that there was no direct evidence of the identity of the driver of the mini-van that fled from Officer Lee. However, direct evidence is not required to survive a motion to dismiss; circumstantial evidence is sufficient "if it gives rise to a reasonable inference of defendant's guilt." *Steelman*, 62 N.C. App. at 313, 302 S.E.2d at 638-39.

In the instant case, both direct and circumstantial evidence give rise to a reasonable inference that defendant drove the mini-van that fled from Officer Lee. The mini-van was found in an area toward which it was observed fleeing by Officer Lee. When he lost sight of the mini-van, Officer Lee advised communications that the mini-van may have gone to U.S. Highway 321 or to North Main Street. Sergeant Penley "spotted a vehicle matching a similar description on [U.S.] 321[.]" Then, as Sergeant Penley approached, he saw the wreck. He observed a "black male with a plaidish-type shirt on" jump out of the mini-van and scale the wall between the parking lots of Shoney's and Wendy's. Sergeant Penley found a hat beside the mini-van that he had observed defendant wearing on the previous night. There was no evidence of an additional person being present in the mini-van. Officer Lee arrived at the parking lot "no more than 10 or 15 minutes" after he lost sight of the mini-van that fled from him.

As discussed above, Officer Lee's testimony that he recognized the mini-van that crashed in the parking lot as the mini-van that fled from him is direct evidence that it was the same mini-van. This was strengthened by the first letter of the mini-van's tag being a "W." Further, only 10-15 minutes elapsed from when Officer Lee last saw the mini-van until he arrived at the Wendy's parking lot. Since Officer Lee drove down North Main Street rather than proceeding directly to U.S. Highway 321, only a short period of time elapsed from when Officer Lee lost the mini-van until it was sighted by Sergeant Penley. This gives rise to a reasonable inference that the same person was operating the mini-van on both occasions.

The majority relies upon evidence that conflicts with Officer Lee's testimony. Weighing conflicting testimony is a task for the jury, not the trial court. "When considering a motion to dismiss for insufficiency of evidence, the court is concerned only with the legal sufficiency of the evidence to support a verdict, not its weight, which is a matter for the jury." *State v. Blake*, 319 N.C. 599, 604, 356 S.E.2d 352, 355 (1987). "Contradictions and discrepancies do not warrant

dismissal of the case—they are for the jury to resolve." *State v. Montgomery*, 341 N.C. 553, 561, 461 S.E.2d 732, 736 (1995).

The majority also cites an unpublished opinion, *State v. Peguse*, 173 N.C. App. 642, 619 S.E.2d 594, 2005 N.C. App. LEXIS 2086 (2005). In *Peguse*, the Court held that there was insufficient evidence of the driver's identity as the perpetrator where there was a gap of several hours and an apparent robbery between when a witness saw the defendants and when they fled from law enforcement. *Peguse* is neither binding nor persuasive authority. There is a major difference between a time lapse of several hours in *Peguse* and several minutes in the instant case.

Applying the correct standard of review, I would hold that the evidence gave rise to a reasonable inference that defendant was the operator of the mini-van that fled from Officer Lee, and was sufficient to warrant the submission of the charge of felony fleeing to elude arrest to the jury.

### III. Possession of Cocaine

The State offered testimony concerning the bag of cocaine found in the parking lot. Officer Lee testified that the bag was found "less than a car length away," "at an angle where the vehicle had curved and hit the pole." There was no other evidence offered as to where in relationship to the mini-van, or to the defendant's flight route, the cocaine was found. I agree with the majority that this evidence was insufficient to submit the charge of possession of cocaine to the jury.

### IV. Possession of Marijuana

I disagree with the majority that there was insufficient evidence to submit the charge of possession of marijuana to the jury. The evidence presented to the jury as to the possession of marijuana was different, and more detailed than the possession of cocaine. The marijuana was not found on the person of defendant, and the State had to prove its case based upon constructive possession, showing incriminating circumstances. *See State v. Brown*, 310 N.C. 563, 568-69, 313 S.E.2d 585, 588-89 (1984).

Our Supreme Court has noted that constructive possession cases "have tended to turn on the specific facts presented." *State v. Miller*, 363 N.C. 96, 99, 678 S.E.2d 592, 594 (2009). The Courts have considered a variety of factors to determine whether sufficient incriminating circumstances exist to support a constructive possession. In *State*

*v. Neal*, 109 N.C. App. 684, 428 S.E.2d 287 (1993), the Court held evidence of constructive possession to be sufficient where the defendant was observed fleeing from the area where cocaine was found. In *Neal*, the Court held evidence sufficient for constructive possession where another defendant stood in the room where the cocaine was later found and "[m]oments later" was found in another room with approximately $860. *Neal*, 109 N.C. App. at 688, 428 S.E.2d at 290.

In the instant case, the most detailed evidence concerning the marijuana came from Officer Taft Love. Officer Love testified that the marijuana was found on the passenger side of the mini-van near a corral where the Wendy's dumpster was located. While Officer Lee testified that the bag containing the marijuana was 3 to 4 feet from the mini-van, Officer Love testified that it was "a car length, give or take a few feet." Officer Love was examined extensively about the condition of the clear, plastic bag, which he testified had not been run over, was not dirty, was not torn, and was not worn in any way. This testimony raises an inference that the bag had been in the parking lot only for a short period of time.

Next, Officer Love testified that the passenger side window was down, which he found to be unusual given that it was "very cold" that night. He then testified that the marijuana was "on the passenger's side window side on the ground," and that "it would have been somewhere between five or ten feel [sic] away from where the van was shortly before it struck the pole." Officer Love found a "blunt wrapper" in the mini-van, under defendant's wallet. He testified over objection that this was "often associated with—with smoking marijuana." This objection was not argued on appeal. Officer Love also found about $800 in or beside the wallet containing defendant's identification card.

I would hold that this evidence provided a reasonable inference that defendant panicked when Sergeant Penley activated his blue lights on U.S. Highway 321; and that defendant executed an abrupt left turn across three to four lanes of travel into the Wendy's parking lot. As defendant executed this maneuver, he was rolling down the window, and throwing the marijuana out the passenger-side window. As a result of attempting to do all of these things at once, he crashed the mini-van into the pole. The defendant's flight, the location of the marijuana, the condition of the bag, the blunt wrapper in the mini-van, and the money in the mini-van are sufficient "incriminating circumstances" to warrant the submission of the possession of marijuana charge to the jury.