**STATE v. ROYSTER**

[224 N.C. App. 374 (2012)]

STATE OF NORTH CAROLINA

v.

ELLIS ROYSTER, JR.

No. COA12-458

Filed 18 December 2012

**1. Search and Seizure—vehicle stop—motion to suppress— reasonable articulable suspicion—speeding**

The trial court did not err in a feloniously carrying a concealed weapon case by denying defendant's motion to suppress evidence arising from a vehicle stop based on an officer's alleged lack of reasonable articulable suspicion. Since there was a reasonable suspicion that defendant was speeding, any evidence resulting from the stop need not have been suppressed.

**2. Identification of Defendants—driver of speeding vehicle— motion to suppress—reasonable suspicion**

The trial court did not err in a feloniously carrying a concealed weapon case by denying defendant's motion to suppress based on alleged insufficient evidence identifying defendant as the driver of a speeding vehicle. Although the officer lost sight of defendant, the amount of time was minimal, approximately thirty seconds, and when the officer saw the vehicle again, he recognized both the car and the same driver immediately.

Appeal by Defendant from judgment entered 27 October 2011 by Judge Robert C. Ervin in Mecklenburg County Superior Court. Heard in the Court of Appeals 9 October 2012.

*Roy Cooper, Attorney General, by David B. Shick, Associate Attorney General, for the State.*

*James N. Freeman, Jr., for Defendant.*

THIGPEN, Judge.

Ellis Royster, Jr., ("Defendant") appeals from a judgment entered convicting him of feloniously carrying a concealed weapon, after Defendant's no contest plea, challenging the denial of his motion to suppress the evidence arising from the stop in this case. We conclude the trial court did not err by denying Defendant's motion to suppress.

The evidence of record tends to show the following: At approximately 5:00 p.m. on 31 October 2009, Sergeant Scott Sherwood ("Sergeant Sherwood") of the Charlotte-Mecklenburg Police Department observed a man, later identified as Defendant, driving a gray 2001 Cadillac SLS in the lane of traffic opposite to him near The Plaza in Charlotte, North Carolina. Sergeant Sherwood "recognized that [Defendant] was going above the [speed] limit[.]" After observing Defendant for 3 to 5 seconds, Sergeant Sherwood estimated that Defendant's speed was 52 miles per hour. Sergeant Sherwood made a U-turn and pursued Defendant[,] but Defendant "just maintained his speed and kept going outbound[.]" Sergeant Sherwood lost sight of Defendant at a left-hand curve, and after failing to spot Defendant in the straight stretch of roadway following the curve, Sergeant Sherwood concluded, "the only logical place for his car to be . . . [was that Defendant took] a right-hand turn[.]" Sergeant Sherwood turned right and immediately saw Defendant, who had turned his car around and started driving back in the direction from which he had come.

Sergeant Sherwood stopped Defendant, smelled marijuana coming from the vehicle, and discovered that Defendant was carrying a concealed weapon. Defendant was arrested. On 12 July 2010, Defendant was indicted on one count of feloniously carrying a concealed gun in violation of N.C. Gen. Stat. § 14-269 (2011).[1] Defendant filed a motion to suppress the evidence arising from the stop, and the motion came on for hearing at the 24 October 2011 session of Mecklenburg County Superior Court. The trial court denied Defendant's motion to suppress in open court. Defendant preserved his right to appeal the denial of his motion to suppress, after which Defendant pled no contest to the charge of carrying a concealed weapon. The trial court entered a judgment in open court, consistent with the plea agreement, convicting Defendant of feloniously carrying a concealed weapon. Defendant gave notice of appeal from this judgment in open court. The trial court entered a judgment on 27 October 2011.

## I. Standard of Review

"The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *State v. Biber*, 365 N.C. 162, 167-68, 712 S.E.2d 874, 878 (2011) (citation omitted). "The trial court's findings are conclusive on

---

1. The speeding and marijuana citations against Defendant were voluntarily dismissed by the State.

appeal if supported by competent evidence, even if the evidence is conflicting." *State v. Icard*, 363 N.C. 303, 312, 677 S.E.2d 822, 828 (2009) (citation and quotation marks omitted). "Conclusions of law are reviewed *de novo* and are subject to full review." *Biber*, 365 N.C. at 168, 712 S.E.2d at 878 (citation omitted). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Id.*

In this case, the trial court did not enter a written order denying Defendant's motion to suppress. Rather, the trial court made the following ruling from the bench:

> THE COURT: All right. Based upon the evidence presented and the Court's review of the case law cited by the defense as well as some case law the Court has from the earlier order in a similar case, the Court perceives that the motion to suppress should be denied and has concluded that there's probable cause to support the stop for speeding; that upon the finding of the marijuana, that effectively would give probable cause to search the car, also will permit a reasonable officer to remove the defendant from the vehicle and to frisk him under the *Terry* standard. Plus it may well be enough that the smelling of the marijuana in the car conceivably could create probable cause for an arrest. And that portion I have to defer to further research, but I don't think that changes the outcome.

As a preliminary matter, we note that N.C. Gen. Stat. § 15A-977(f) (2011) requires that "[t]he judge must set forth in the record his findings of facts and conclusions of law." *Id.* However, N.C. Gen. Stat. § 15A-977(f), has been interpreted as "mandating a written order unless (1) the trial court provides its rationale from the bench, and (2) there are no material conflicts in the evidence at the suppression hearing." *State v. Williams*, 195 N.C. App. 554, 555, 673 S.E.2d 394, 395 (2009) (citation omitted). "If these two criteria are met, the necessary findings of fact are implied from the denial of the motion to suppress." *Id.* In this case, although the trial court did not enter a written order, it provided the aforementioned rationale for its ruling in open court. Moreover, Sergeant Sherwood was the only testifying witness; therefore, there was no material conflict in the evidence. As such, the necessary findings are implied from the denial of the motion to suppress. *Id.*

STATE v. ROYSTER

[224 N.C. App. 374 (2012)]

On appeal, Defendant argues the trial court erred by denying his motion to suppress evidence. Specifically, Defendant contends the trial court erred in concluding that the initial stop was supported by a reasonable articulable suspicion because (1) there was insufficient evidence that Defendant was speeding, and (2) there was insufficient evidence supporting the identification of Defendant as the driver of the allegedly speeding vehicle. We conclude these arguments are meritless.

## II. Reasonable Suspicion

[1] In Defendant's first argument on appeal, he contends the trial court erred by denying his motion to suppress evidence arising from the stop because Sergeant Sherwood lacked a reasonable articulable suspicion. We disagree.

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. The North Carolina Constitution provides similar protection. N.C. Const. art. I, § 20. "A traffic stop is a seizure 'even though the purpose of the stop is limited and the resulting detention quite brief.' " *State v. Styles*, 362 N.C. 412, 414, 665 S.E.2d 438, 439 (2008) (citation omitted). "Traffic stops have 'been historically reviewed under the investigatory detention framework first articulated in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).' " *Id.* (citation omitted). "[A] traffic stop is permitted if the officer has a 'reasonable, articulable suspicion[2] that criminal activity is afoot.' " *Id.* (citation omitted).

> Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence. The standard is satisfied by some minimal level of objective justification. This Court requires that [t]he stop . . . be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training. Moreover, [a] court must consider the totality of the circumstances—the whole picture in determining whether a reasonable suspicion exists.

*Id.*, 362 N.C. at 414, 665 S.E.2d at 439-40 (internal citations and quotation marks omitted). "[A]n investigatory-type traffic stop is justified

---

2. The trial court in this case concluded there was probable cause, rather than a reasonable suspicion, that Defendant was speeding. However, a reasonable suspicion is all that is required to permit a stop. *Styles*, 362 N.C. at 414, 665 S.E.2d at 439-40.

if the totality of circumstances affords an officer reasonable grounds to believe that criminal activity may be afoot." *State v. Wilson*, 155 N.C. App. 89, 95, 574 S.E.2d 93, 98 (2002), *overruled on other grounds, Styles*, 362 N.C. at 415, 665 S.E.2d at 440 (citation and quotation marks omitted).

> The totality of the circumstances test must be viewed through the prism of a reasonable police officer standard; that is, the reviewing court must take into account an officer's training and experience. Thus, a police officer must have developed more than an " 'unparticularized suspicion or hunch' " before an investigatory stop may occur.

*State v. Willis*, 125 N.C. App. 537, 541, 481 S.E.2d 407, 410 (1997) (citations omitted).

In this case, Defendant specifically argues that Sergeant Sherwood's observation of Defendant's vehicle traveling for three to five seconds in the opposite direction, and the lack of any testimony by Sergeant Sherwood regarding the distance he saw Defendant travel at such speed, does not constitute facts sufficient to establish that Sergeant Sherwood had a reasonable opportunity to judge the vehicle's speed. Therefore, these facts, Defendant argues, could not be the basis for a reasonable suspicion that Defendant was speeding.

"[A]ny person of ordinary intelligence, who had a reasonable opportunity to observe a vehicle in motion and judge its speed may testify as to his estimation of the speed of that vehicle." *State v. Barnhill*, 166 N.C. App. 228, 232, 601 S.E.2d 215, 218, *disc. review denied*, 359 N.C. 191, 607 S.E.2d 646 (2004). "[W]here the witness does not have a reasonable opportunity to judge the speed, it is error to permit such testimony." *Smith v. Stocks*, 54 N.C. App. 393, 398, 283 S.E.2d 819, 822 (1981). "The observation must be for such a distance and over such a period of time as to enable the witness to do more than merely hazard a guess as to speed." *Id.*

*State v. Barnhill*, 166 N.C. App. 228, 601 S.E.2d 215 (2004), is instructive in the present case. In *Barnhill*, this Court upheld the admission of testimony by a police officer, as being sufficient to establish probable cause,[3] on the following facts:

_____

3. After the United States Supreme Court's ruling in *Whren v. United States*, 517 U.S. 806, 810, 135 L. Ed. 2d 89, 95 (1996), there was some question as to whether probable cause or a reasonable suspicion was sufficient, in the context of readily observ-

Officer Malone had an unobstructed view of the vehicle, as well as ample opportunity to observe defendant's progress up Fourth Street. Furthermore, Officer Malone's personal observation of the speed of defendant's truck, coupled with the sound of the engine racing and the bouncing of the car as it passed through the intersection, furnished him with a sufficient blend of circumstances to establish there was a fair probability that defendant was exceeding a speed greater than was reasonable and prudent under the conditions existing at that time in violation of N.C. Gen. Stat. § 20-141(a). Thus, Officer Malone had probable cause to stop defendant's vehicle.

*Id.* at 233, 601 S.E.2d at 218. Based on these facts, this Court concluded that "the stop did not violate defendant's right to be free from unreasonable search and seizure[;] [s]ince the stop was valid, any evidence which resulted from the stop need not be suppressed." *Id.*

Defendant cites *McNeil v. Hicks*, 119 N.C. App. 579, 581, 459 S.E.2d 47, 48-49 (1995), for the proposition that the stop in this case was not justified. The Court in *Hicks* concluded eyewitness testimony was inadmissible on the issue of speed, because the eyewitness did not have a reasonable opportunity to judge speed. *Id.* Her observation was not for such a distance and over such a period of time as to enable her to do more than merely hazard a guess as to speed. *Id.* In *Hicks*, the following facts were pertinent to this question:

[T]he plaintiff's vehicle was stopped on Utah Drive at the intersection with Cole Drive in Forsyth County. Defendant Hicks (Hicks) was traveling south on Cole Drive. As Hicks approached the intersection at which plaintiff was stopped, she swerved into the right shoulder of Cole Drive to avoid an oncoming car and struck plaintiff's car on the driver's side, causing plaintiff to suffer physical injury and lost wages. The driver of the car which Hicks attempted to avoid was never identi-

---

able traffic offenses, to be the basis for a stop. However, in *Styles*, 362 N.C. at 415, 665 S.E.2d at 440, our Supreme Court held, in accordance with every other federal circuit to have then considered the issue, that "reasonable suspicion is the necessary standard for traffic stops, regardless of whether the traffic violation was readily observed or merely suspected." *Id.* Nonetheless, *Barnhill* is instructive in this case, as the Court concluded the facts in *Barnhill* established probable cause, and a reasonable suspicion is a less exacting standard.

fied. Plaintiff subsequently brought suit against Hicks
for her alleged negligence in causing the collision[.]

*Id.* at 580, 459 S.E.2d at 48. The Court in *Hicks* concluded the plaintiff's testimony concerning the speed of the defendant's vehicle was inadmissible:

> Plaintiff testified that she did not have time to form an
> opinion of the speed at which Hicks was traveling when
> she first saw her in the ditch, and that it was about three
> seconds from the time she saw Hicks' car in the ditch
> until the time it hit her. Since plaintiff's testimony clearly
> established that she had no reasonable opportunity to
> observe Hicks' vehicle and judge its speed, we hold that
> the trial court correctly excluded plaintiff's testimony.

*Id.* at 581, 459 S.E.2d at 48.

We believe *Hicks* is distinguishable from this case. Here, Sergeant Sherwood gave the following testimony on the issue of whether he had a reasonable opportunity to observe Defendant's speed:

> I was traveling inbound on The Plaza at about the 53[00],
> 5200 block of The Plaza. As I was traveling inbound, I
> observed a gray 2001 Cadillac SLS traveling outbound.
> At that time, I estimated the speed at 52 in a 35. . . .
> I worked The Plaza as part of Hickory Grove and at the
> time North Tryon. So I was very familiar with The Plaza.
> And as I'm traveling inbound, he was coming toward me
> in the opposite lane of travel. It's a four-lane road so it's
> usually—it's mostly moderate traffic, unless it's late at
> night. And I observed that he was speeding based on all
> the traffic conditions and the environment at the time.

When asked, "How long did you observe the car prior to determining that he was doing 52 in that 35?" Sergeant Sherwood responded, "It would have been three to five seconds." Moreover, Sergeant Sherwood also supplied testimony that after he made a U-turn and pursued Defendant, Defendant "maintained his speed and kept going outbound on The Plaza." However, Sergeant Sherwood gave no testimony as to the distance he observed Defendant travel in excess of the speed limit.

In this case, Sergeant Sherwood was also a radar certified officer, and to receive such certification, Sergeant Sherwood had to undergo the following training:

> It's a . . . one-week school. There's, like any other classes, a book portion where you learn the speeding laws. And they have changed over the years as far as the curriculum for speeding. At the end of the week, you go on a practical day where you practice clocking cars with the radar. . . . [A]s part of the way any officer is trained in speeding, you have to visually estimate a vehicle. You have to call out that speed to your instructor. And without looking at your radar equipment, whichever equipment you're being trained on, you have to estimate the speed, lock the speed—well, estimate speed, tell your instructor what you think the speed is, and then lock the speed in. And then you uncover what the actual speed is indicated on the radar. And to get certified, you have to do this 12 times. . . . So it's a series of 12 different clocks in that fashion where you estimate speed, call it out to your instructor and then reveal the speed to your instructor. Through that process, you're not allowed to miss any one clock or estimation by more—by more than 12 miles an hour. And you can't miss an overall error any more than 36 so that averages out to two to three miles an hour per clock. They have a margin of error when you get certified. . . . Every . . . three years you have to be re-certified and go back through that process. And it's a shorter period. You don't have to go back through the week-long school. You have to go through a . . . three-day school.

Sergeant Sherwood became certified on 31 October 2009.

Here, almost every fact is distinguishable from the facts of *Hicks*, except the amount of time Sergeant Sherwood and the eyewitness in *Hicks* observed the vehicle, which in both cases was approximately three seconds. In *Hicks*, however, those three seconds occurred immediately prior to the eyewitness' vehicle being struck by the Defendant's vehicle. In this case there is further testimony showing that Defendant "maintained his speed" after Sergeant Sherwood made a U-turn and began pursuing Defendant. Moreover, even though Sergeant Sherwood did not testify as to a specific distance he observed Defendant travel, some distance was implied by Sergeant

Sherwood's testimony regarding the U-turn he made and the curve in the road, during which time Defendant "maintained his speed," and after which Sergeant Sherwood briefly lost sight of Defendant. Furthermore, though "it is not necessary that an officer have specialized training to be able to visually estimate the speed of a vehicle[,] [and] [e]xcessive speed of a vehicle may be established by a law enforcement officer's opinion as to the vehicle's speed after observing it[,]" *Barnhill*, 166 N.C. App. at 233, 601 S.E.2d at 218, in this case, Sergeant Sherwood did have specialized training in visual speed estimation.

In this case, the trial court provided its rationale for denying the motion to suppress from the bench, and there were no material conflicts in the evidence presented at the suppression hearing. As such, the necessary findings of fact were implied by the denial of the motion to suppress. *See Williams*, 195 N.C. App. at 555, 673 S.E.2d at 395. These findings support the trial court's conclusion of law that there was a reasonable suspicion that Defendant was speeding. Based on the totality of the circumstances, including Sergeant Sherwood's particularized training in estimating the speed of vehicles, we believe the stop did not violate Defendant's right to be free from unreasonable search and seizure on the basis that there was no reasonable suspicion that Defendant had committed a traffic violation. Since there was a reasonable suspicion that Defendant was speeding, any evidence which resulted from the stop need not be suppressed on this basis, and the trial court did not err by denying Defendant's motion to suppress on this ground.

### III. Identification

**[2]** In Defendant's second argument on appeal, he contends the trial court erred by denying his motion to suppress evidence because there was insufficient evidence identifying Defendant as the driver of the allegedly speeding vehicle due to the short period of time during which Sergeant Sherwood lost sight of Defendant. On this basis, Defendant challenges the trial court's conclusion that there was a reasonable suspicion to support the stop. We disagree.

The standard of review on the question of whether there was a lack of sufficient identification of Defendant, such that there was no reasonable suspicion to stop him, is the same as the standard of review on the question addressed in the previous section, i.e, "whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *Biber*, 365 N.C. at 167-68, 712 S.E.2d at 878. In this case, because the

trial court provided its rationale for denying the motion to suppress from the bench, and because there were no material conflicts in the evidence presented at the suppression hearing, the necessary findings of fact were implied by the denial of the motion to suppress. *See Williams*, 195 N.C. App. at 555, 673 S.E.2d at 395. "Conclusions of law are reviewed de novo and are subject to full review." *Biber*, 365 N.C. at 168, 712 S.E.2d at 878 (citation omitted). "A traffic stop is permitted if the officer has a 'reasonable, articulable suspicion that criminal activity is afoot.' " *Styles*, 362 N.C. at 414, 665 S.E.2d at 439 (citation omitted).

Defendant cites *State v. Lindsey*, ___ N.C. App. ___, 725 S.E.2d 350, *disc. review allowed*, ___ N.C. ___, 726 S.E.2d 177 (2012), and *State v. Steelman*, 62 N.C. App. 311, 302 S.E.2d 637 (1983), in support of his argument that there was insufficient evidence identifying Defendant as the driver of the allegedly speeding vehicle in this case.[4]

In *Lindsey* ___ N.C. App. ___, 725 S.E.2d 350, this Court held, in the context of a motion to dismiss, there was not substantial evidence of the defendant's identity as the perpetrator of the offense charged. Evidence was conflicting as to the description of the van driven by the perpetrator. One officer testified that the van was "bluish." *Id.* at ___, 725 S.E.2d at 353. When asked what type of van it was, the officer responded, "I don't know what type, but it was a mini-van from what I saw of it." *Id.* A different officer, however, testified that the van Defendant was driving was "greenish-bluish" and had a silver stripe on the side of it. *Id.* On direct, when the first officer was shown the photograph of the van, he stated, "I recognized it's bluish—well, except for the silver. Like I said, at that time, I only got a split second look at the vehicle. I didn't notice that. I remembered the tag, the first letter was a W, and the vehicle was bluish." *Id.* The officer did not see

---

4. As a preliminary matter, we note that the two cases cited by Defendant on appeal pertain to a defendant's motion to dismiss the charge against him, not a motion to suppress evidence. On a motion to dismiss, this Court applies a different standard of review, analyzing the question de novo to determine "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *State v. Lindsey*, ___ N.C. App. ___, ___, 725 S.E.2d 350, 353 (2012). The State also does not provide any authority for the specific question presented by Defendant—identification in the context of a motion to suppress—but, instead, focuses its argument on distinguishing the cases cited by Defendant. We also further note that Judge Steelman authored a dissenting opinion in *Lindsey* on the issue of whether the evidence in that case gave rise to a reasonable inference that the defendant was the operator of the mini-van, and the decision of this Court in *Lindsey* is currently being reviewed by the North Carolina Supreme Court.

the driver, because he "[n]ever got close." *Id.* at \_\_\_, 725 S.E.2d at 354. On these basic and additional facts, the *Lindsey* Court held that there was not substantial evidence that the defendant was the perpetrator of the offense, such that the trial court erred in denying the defendant's motion to suppress.

Defendant next attempts to distinguish *State v. Steelman*, 62 N.C. App. 311, 302 S.E.2d 637 (1983), in which this Court held that the trial court did not err in denying Defendant's motion to dismiss based on a lack of substantial evidence that the defendant in *Steelman* was the perpetrator of the offense, based on the following evidence:

> Wilkesboro police officer Gary Parsons observed a red 1972 Toyota traveling at a high rate of speed on U.S. 421. The driver, who was male, did not appear to be wearing a shirt. There was a female passenger in the vehicle. The vehicle turned right at a traffic light without stopping and then failed to stop at a stop sign. Parsons turned on the blue light and siren in his patrol car and pursued the Toyota down U.S. 421. Parsons was traveling 85 m.p.h. and was not gaining on the vehicle. The Toyota then turned down another road, ran onto a traffic island, and hit a sign. While traveling approximately 75 m.p.h., it passed several cars in a no passing 35 m.p.h. zone. The officer lost sight of the vehicle when it turned again onto a logging road. He was unable to follow the vehicle down that road, due to brush and a pine tree which was lying across the road. He drove on to where the logging road came out, just off Country Club Road, which by way of the logging road would have been about a 3/4 mile drive. Meanwhile, a highway patrolman spotted the Toyota on Country Club Road about 9:00 p.m. and followed it to where it pulled off onto a private drive and wrecked in a garden. The driver, who was not wearing a shirt, and a female passenger got out of the car and ran off. The patrolman identified defendant as the driver.

*Steelman*, 62 N.C. App. at 312, 302 S.E.2d at 637. Based on the foregoing facts, the Court in *Steelman* held that there was substantial evidence of the defendant's being the perpetrator of the offense, such that the defendant's motion to dismiss was properly denied:

> [T]here was apparently a period of time when no one saw the car involved in the offenses. The defendant in

this case theorizes that during that interval, the driver and passenger could have switched positions. This argument ignores the incontroverted fact that Officer Parsons and the highway patrolman both described the driver as male and the passenger as female. The defendant also submits that some unknown third person could have got out from behind the wheel and let defendant drive. We recognize that there are numerous possibilities as to what might have happened on the logging road that night. For circumstantial evidence to be sufficient to overcome a motion to dismiss, it need not, however, point unerringly toward the defendant's guilt so as to exclude all other reasonable hypotheses. *State v. Jones*, 303 N.C. 500, 279 S.E. 2d 835 (1981). The evidence is sufficient to go to the jury if it gives rise to "a reasonable inference of defendant's guilt."

*Id.* at 313, 302 S.E.2d at 638-39.

Although there are obvious differences between the facts of the present case as compared to either of the foregoing cases cited by Defendant on appeal, we find the facts of *Steelman* more analogous to this case than the facts of *Lindsey*. In this case, the following testimony by Sergeant Sherwood supported Defendant's identification as the perpetrator of the alleged speeding offense, despite the fact that Sergeant Sherwood lost sight of Defendant for a brief period of time, such that we believe Sergeant Sherwood had a reasonable suspicion warranting his stop:

> As I was traveling inbound, I observed a gray 2001 Cadillac SLS traveling outbound. At that time, I estimated the speed at 52 in a 35, which The Plaza is part of.

Sergeant Sherwood initially observed the car for three to five seconds, after which he made a U-turn and followed Defendant until Defendant turned into the curve. At this point, Sergeant Sherwood lost sight of Defendant. Sergeant Sherwood said then the following happened:

> I saw that the gray Cadillac I observed was not on the stretch. And by estimating his speed and realizing that he hadn't sped up—I didn't notice him speed up or slow down—the only logical place for his car to be would be he turned down Shannonhouse—made a right-hand turn down Shannonhouse.

Sergeant Sherwood further explained:

> [A]t that point when I come around the curve and I don't see the vehicle, only two things could have happened. Either he must have sped up at a great rate of speed to get out of sight by going straight or slowed down and turned down Shannonhouse.
>
> Q. So what did you do after you made that—after you had that thought?
>
> A. I slowed down and made the right-hand turn.
>
> Q. On Shannonhouse?
>
> A. Correct.
>
> Q. Okay. What did you observe as you turned down to Shannonhouse?
>
> A. As soon as I made the turn down Shannonhouse, I observed that the gray Cadillac I estimated the speed on was actually coming right at me, head to head. Not actual head to head but –
>
> Q. Shannonhouse is a two-lane road?
>
> A. Right. Shannonhouse is a two-lane road.

When asked, "How long was it from the time that you made the U-turn on The Plaza till the time that you saw the Cadillac on Shannonhouse? Sergeant Sherwood responded, "There was a pause for traffic at the U-Turn so I had to stop and wait. That was only four to five seconds, I imagine. And then getting up The Plaza and then actually coming to confront the car on Shannonhouse, probably close to 20 seconds, 30 seconds." Sergeant Sherwood then stated, "As soon as I saw the car, I recognized it immediately, activated my blue lights and started edging over." Sergeant Sherwood also gave the following detailed testimony regarding his identification of Defendant:

> As part of the estimating vehicles and traffic stops, that sort of thing, it's also part of the training that when you estimate a car, you know, it[]s vehicle identification. So you always try and pick up the make and model. And obviously the color is an important issue and the occupants in the vehicle. When I first estimated the speed and there's that moment when the vehicle passes, I also noticed that there was only one vehicle—one passenger,

which was the driver—one person in the vehicle, the driver. It was a shorter black male. And that was also part of my identification on Shannonhouse once I made the stop.

Sergeant Sherwood also identified Defendant in Court and gave the following testimony specifically pertaining to the question presented by Defendant on appeal:

A. I believe it was the defendant based on the short time and the location of the stop and—

Q. But you don't know that for certain, do you?

A. I do.

Sergeant Sherwood elaborated:

A. . . . I know the person I saw driving was the defendant. You asked if someone could have gotten in or out of the car. And during that time it is conceivable. Somebody could have.

Q. Could have. It could have been a different driver on Shannonhouse than it was on The Plaza; correct?

A. No.

Q. It could have.

A. You asked if it was possible. I said yes, it's possible. And then you asked if it was the same driver. And yes, it is the same driver that I observed on The Plaza.

Based on the necessary implied findings of facts, see *Williams*, 195 N.C. App. at 555, 673 S.E.2d at 395, and considering the totality of the circumstances, we believe the trial court's conclusion that Defendant was the person driving the vehicle was not error. The amount of time Sergeant Sherwood lost sight of Defendant was minimal, approximately thirty seconds. Moreover, when Sergeant Sherwood saw the vehicle again, he recognized both the car and the "same driver," "immediately[.]" The stop did not violate Defendant's right to be free from unreasonable search and seizure on the basis that there was an insufficient identification of Defendant as the perpetrator of the traffic violation to establish a reasonable suspicion.

NO ERROR.

Judges McGEE and BRYANT concur.